IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE KLASTOW,                    :    CIVIL ACTION
                                  :    NO. 10-6079
          Plaintiff,              :
                                  :
     v.                           :
                                  :
NEWTOWN FRIENDS SCHOOL,           :
                                  :
          Defendant.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 6, 2012


          Bruce Klastow ("Plaintiff") brings this civil action

against the Newtown Friends School ("Defendant") for violations

of his right to be free from age discrimination and retaliation

under the Age Discrimination in Employment Act of 1967 ("ADEA").

Defendant moves for summary judgment. For the reasons that

follow, the Court will grant the motion.


I.   **BACKGROUND**[1]

          Defendant is a Quaker-related grade school that

operates in Newtown, Pennsylvania. Klastow Dep. 18:14, July 29,

2011; Compl. ¶ 3, ECF No. 1. From 1996 to August 2010, the Head

of School was Steven Nierenberg. Nierenberg Dep. 10:19-23, Sept.

---

[1]       At this stage in the proceedings, the Court views the
facts in the light most favorable to Plaintiff and draws all
reasonable inferences in Plaintiff's favor.

12, 2011. Nierenberg oversaw the daily operations of the school. Id. at 12:5-12. And from 1998 to the present, the Upper School Head, grades six through eight, was Jody Smith. Jody Smith Dep. 9:10-25, Oct. 7, 2011. Smith oversees operations of the Upper School, evaluates Upper School faculty, and participates in the committee involved in hiring new faculty. Id. at 10:2-16.

In 1979, Defendant hired Plaintiff, born in 1949, as a part-time physical education teacher. Klastow Dep. 6:24, 14:16-20. By the 2008-2009 school year, Plaintiff was a full-time history and math teacher. Id. at 16:5-9. Defendant employed Plaintiff pursuant to a year-to-year contract, which was terminable at will. Id. Ex. 11. Plaintiff reported directly to Jody Smith. Jody Smith Dep. 20:22-24.

In June 2008, Newtown Friends School Business Manager Alice Gens discovered an issue concerning Plaintiff's use of the school's credit card for personal items. Gens Dep. 10:4-15, Oct. 7, 2011. When Gens met with Plaintiff in June about the issue, Plaintiff told her he did not have his own credit card with him, so he used the school's card that was issued to him. Id. at 10:24-11:9. Plaintiff also disclosed that Gens should expect to see two additional charges on the next billing statement, but he understood not to use the card for personal items in the future. Id. at 11:5-9. Additional charges appeared on the next billing statement, as Gens expected, but she was unable to contact

Plaintiff during the summer for reimbursement. Id. at 12:4-10.
In September 2008, Gens again spoke to Plaintiff about
additional personal charges, which she did not expect, that
again appeared on the school's credit card for gasoline, a bar
or restaurant bill, and a rental car. Id. at 12:23-13:11.
Plaintiff reimbursed Defendant for the personal expenses. Id. at
13:18. But after the second incident, Gens informed Nierenberg,
who met with Plaintiff in September. Nierenberg Dep. 81:17-23.
Nierenberg warned Plaintiff that any additional personal use of
the school's credit card would result in his termination. Id.
90:4-10; Klastow Dep. Ex. 8.

Around August 2008, Defendant placed Marion Smith, a
fourth-grade teacher with whom Plaintiff shares a personal
relationship, in a professional development and assistance
program called the Teacher Assistance Track ("TAT"). Klastow
Dep. 43:7-11, 56:6-19; Jody Smith Dep. 19:12-15. If the head of
either the Lower School or Upper School determines that a
teacher at the school needs additional support in terms of
performance improvement, the head, in conjunction with the Head
of School, places the teacher on the TAT. Jody Smith Dep. 19:16-
21, 20:1-12. In March 2009, Defendant terminated Marion Smith
for the reasons Nierenberg placed her on the TAT. Klastow Dep.
61:20-62:10.

In March 2009, Gens learned of a discrepancy in expenses and funds for the school's ski club. Gens Dep. 26:2-5. Plaintiff was a coordinator of the ski club and collected checks and cash from students and parents to fund the club's trips. Klastow Dep. 24:25-25:3, 94:17-20. Plaintiff delivered the funds to the school's bookkeeper to cover the club's expenses. Gens Dep. 25:16-20. The bookkeeper informed Gens of a $3,000 to $4,000 discrepancy in the club's funds resulting from expenses relating to the club's recent trips. Id. at 26:10-15. Gens contacted the organizers to learn that Plaintiff was in charge of collecting funds from the students and parents for the recent trips. Id. at 26:19-27:9.

At Gens' request, Plaintiff brought Gens an envelope with checks, but the checks were insufficient to cover the club's expenses. Id. at 27:13-19. Gens made numerous requests for Plaintiff to provide the remaining funds. Id. at 28:4-10. Nierenberg asked Plaintiff to leave the school and go home to retrieve the remaining funds. Nierenberg Dep. 94:5-12; Jody Smith Dep. 35:15-18; Gens Dep. 28:11-13. Plaintiff returned with the cash in an envelope with students' names written on the outside of the envelope. Gens Dep. 33:6-10. Although the amounts listed on the envelope matched the cash in the envelope, the ski club's funds were still insufficient to cover its costs. Id. at 31:9, 33:11-13. Nevertheless, Gens declined any further attempt

4

to reconcile the club's budget because doing so would have involved the students, which she was unwilling to do. Id. at 33:20-22. Nierenberg decided Plaintiff would not handle the club's funds the next year. Nierenberg Dep. 96:14-16.

On April 22, 2009, at a Meeting for Worship, Plaintiff stood and made a speech concerning the leadership at the school and certain changes occurring there. Klastow Dep. 73:12-20. A Meeting for Worship is a weekly gathering of Quakers and members of the community wherein individuals are encouraged to rise and speak about issues the community faces. Id. at 73:24-74:13. At this particular meeting, students, parents, faculty, and administrators from the school were present. Id. at 74:15-22. At least some in attendance viewed Plaintiff's remarks as an attack on the school's current leadership, specifically Nierenberg. Gens Dep. 35:6-16; Jody Smith Dep. 41:1-4; Nierenberg Dep. 115:8-11; Klastow Dep. Ex. 6.

On April 24, 2009, Plaintiff, Jody Smith, and Nierenberg met to discuss the incident. Jody Smith Dep. 43:13-14; Klastow Dep. 120:4-7; Klastow Dep. Ex. 5. And on May 12, 2009, Nierenberg placed Plaintiff on paid leave for the remainder of the school year and rescinded Plaintiff's contract for the 2009-2010 school year.[2] Klastow Dep. Ex. 2. Nierenberg

---

[2]     Although Defendant rescinded Plaintiff's contract for the 2009-2010 school year before commencement of that period,

explained that his reasons for his decision were Plaintiff's misuse of the school's credit card, difficulty handling the ski club's funding, and inappropriate comments at the Meeting for Worship. Id.

## II.  PROCEDURAL HISTORY

On November 8, 2010, Plaintiff filed a Complaint against Defendant that alleges one count of discrimination (Count I) and one count of retaliation (Count II) in violation of the ADEA. Compl. ¶¶ 17-29. On January 14, 2011, Defendant answered. Answer 1, ECF No. 4.

On November 21, 2011, Defendant filed the instant Motion for Summary Judgment. Mot. for Summ. J. 1, ECF No. 14. Plaintiff responded. Pl's Resp. 1, ECF No. 15. And Defendant moved for leave to reply and attached a proposed reply brief to the motion. Def.'s Reply 1, ECF No. 16. The matter is now ripe for disposition.[3]

---

for ease of reference, the Court will refer to Defendant's act of placing Plaintiff on paid leave and rescinding Plaintiff's contract as "termination."

[3]      The Court exercises federal-question jurisdiction over Plaintiff's claims. See 28 U.S.C. § 1331 (2006).

### III. LEGAL STANDARD

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**IV.  DISCUSSION**

Under the ADEA, an employer may not discharge an individual because of his age or discriminate against an individual because he opposed an unlawful employment practice or participated in a proceeding under the ADEA.[4] See 29 U.S.C. § 623(a)(1), (d) (2006). Absent direct evidence of discrimination, a plaintiff may prove a claim of unlawful discrimination in violation of the ADEA under the McDonnell Douglas framework.[5] See

---

[4]      ADEA's general discrimination prohibition provides:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .

29 U.S.C. § 623(a)(1) (2006). And ADEA's retaliation provision provides:

It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

Id. § 623(d).

[5]      In attempting to discredit Defendant's proffered legitimate, nondiscriminatory reasons, Plaintiff contends there is "direct evidence" of discrimination. Pl.'s Resp. 15-18. As discussed below, however, the evidence to which Plaintiff refers does not show, either circumstantially or directly, Defendant acted with discriminatory animus. Therefore, the Court proceeds under the McDonnell Douglas framework.

Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009);

Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir.

1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802 (1973)). First, Plaintiff must establish a prima facie

case of discrimination. See Smith, 589 F.3d at 691. Defendant rebuts

the presumption of age discrimination raised by a prima facie

case by proffering legitimate, nondiscriminatory reasons for

terminating Plaintiff. See id. Finally, the ultimate burden

rests with Plaintiff to demonstrate that Defendant's proffered

reasons are pretext and Defendant's true reason for terminating

him was unlawful discrimination or retaliation. See id. The

Court follows this evidentiary framework for unlawful

discrimination and retaliation claims under the ADEA. See Fasold

v. Justice, 409 F.3d 178, 183-84, 188 (3d Cir. 2005).


   A.   Prima Facie Case of Unlawful Discrimination and
        Retaliation

        Defendant asserts it is entitled to judgment as a

matter of law because there is no evidence of record to support

a prima facie case of discrimination or retaliation under the

ADEA. For the reasons that follow, Plaintiff successfully

establishes a prima facie case of discrimination and fails to

establish a prima facie case of retaliation.

1.   <u>Discrimination</u>

To establish a prima facie case for age discrimination, Plaintiff bears the initial burden to show (1) that he is at least forty years of age; (2) that he suffered an adverse employment action; (3) that he was qualified for his position; and (4) that Defendant ultimately replaced him with another employee who was sufficiently younger to support an inference of discriminatory animus. <u>See, e.g.</u>, <u>Smith</u>, 589 F.3d at 689.

Defendant argues there is no evidence of record to support the fourth element of Plaintiff's prima facie case because there is no evidence that someone younger replaced Plaintiff.[6] Rather, Defendant contends, the evidence indicates Defendant "restructured" the position and split Plaintiff's duties among current and new employees. In support of its argument, Defendant asserts that the only evidence relating to Plaintiff's alleged replacement comes from the deposition testimony of former Head of School Steven Nierenberg. Nierenberg testified that Defendant hired a new faculty member to assume some of Plaintiff's teaching duties, but, because Defendant restructured Plaintiff's position, "[Plaintiff's] position might have been . . . taught by someone who was there and some of it

---

[6]      Defendant does not take issue with the remaining elements of Plaintiff's prima facie case.

might have been taught by someone who was hired." Nierenberg
Dep. 140:12-14. Defendant contends this evidence, on its own, is
insufficient to support the fourth element of a prima facie case
for unlawful age discrimination. Defendant, however, overlooks
other evidence of record relating to this element.

Indeed, Plaintiff raises a genuine dispute of material
fact whether Defendant replaced him with someone sufficiently
younger to raise an inference of discrimination. Plaintiff
points to Defendant's interrogatory response indicating that
Kristen Sanchez (thirty years old) and Meg Young (forty-two
years old) assumed Defendant's responsibilities. Def.'s Resp. to
Interrog. No. 4. Viewing the evidence in the light most
favorable to Plaintiff, Plaintiff has at least raised a genuine
dispute of material fact whether Defendant replaced him with
someone sufficiently younger. See O'Connor v. Consol. Coin
Caterers Corp., 517 U.S. 308, 312 (1996) (unanimous).

2.   Retaliation

Plaintiff alleges Defendant terminated him because he
"spoke out in support" of two former employees, Marion Smith and
Janine Mannick, who were terminated "due to age discrimination."
Compl. ¶ 26-28. To establish a prima facie case for unlawful
retaliation, Plaintiff must show (1) that he engaged in
protected activity under the ADEA; (2) that he was subject to an

11

adverse action; and (3) that there is a causal connection
between the protected activity and adverse action. See Fasold,
409 F.3d at 188. Defendant argues Plaintiff failed to establish
the first and third elements of a prima facie case for
retaliation.[7]

Under the ADEA, an employee engages in protected
activity either by opposing unlawful age discrimination or
participating in proceedings relating to unlawful
discrimination. See 29 U.S.C. § 623(d) (2006). Plaintiff
proceeds under the opposition component of the ADEA's
retaliation provision. Plaintiff must "hold an objectively
reasonable belief, in good faith," that the activity he opposes
is unlawful under the ADEA. See Moore v. City of Phila., 461
F.3d 331, 341 (3d Cir. 2006) (interpreting Title VII's similarly
constructed retaliation clause). In this case, Plaintiff cannot
show he engaged in protected activity under the ADEA.

First, Plaintiff contends he opposed unlawful age
discrimination by speaking privately to Jody Smith and
Nierenberg, separately, about the TAT. Specifically, Plaintiff
complained the administration was not following the "true
intent" of the TAT and that "it seemed like they were targeting

_____

[7]        The parties do not dispute that Plaintiff suffered an
adverse employment action when Defendant terminated his
employment.

12

people who were older." Klastow Dep. 26:4-7. With regard to these private conversations, Plaintiff testified that he "mentioned" the subject of age discrimination against Marion Smith but was unclear to whom exactly he spoke regarding the subject. See id. at 67:18-20 ("I know I said it to [Jody Smith], but I could be wrong on this. I know, I know I had said it to [Nierenberg] also. So I'm thinking more [Nierenberg] than [Jody Smith]."). The evidence of record indicates that Plaintiff was unhappy with Nirenberg's decision-making and placement of certain teachers, including Marion Smith, on the TAT because such placement typically led to the termination of the subject teacher. The only evidence suggesting that Plaintiff objected to the TAT based on unlawful age discrimination is Plaintiff's self-serving statement that he "mentioned" the subject of age discrimination against Marion Smith to either Nierenberg or Jody Smith. Even if Plaintiff mentioned the subject of age discrimination in a private meeting with Nierenberg or Jody Smith, as he contends in his deposition testimony, there is no evidence of record supporting Plaintiff's belief that Nierenberg targeted teachers based on their age. Of all the evidence documenting Plaintiff's complaints regarding Defendant's administration, nothing indicates Plaintiff complained because he believed Defendant placed teachers on the TAT based on their age. Thus, Plaintiff could not have held an objectively

13

reasonable belief that he was opposing age discrimination. See
Moore, 461 F.3d at 341.

Second, Plaintiff contends he opposed unlawful age
discrimination by attending certain "low morale" meetings.
Faculty held a meeting without administrators "to discuss the
deterioration of morale within the building at Newtown Friends
School." Klastow Dep. 47:2-5. Some faculty members drafted a
letter, which Plaintiff did not write, and sent it to the
administrators. Id. at 50:15-51:4. The letter concerned
improving communication between faculty and the administration.
Id. at 50:24-51:1. Plaintiff spoke at a morale meeting over his
concern that administrators made decisions without communicating
with faculty first. Id. at 48:23-12. Nierenberg believed the
"low morale" problem involved Marion Smith's placement on the
TAT. Nierenberg Dep. 97:9-98:4. The evidence of record does not
indicate that the subject of the morale meetings, Plaintiff's
role and speech at the meetings, or any communication to
administrators that grew out of the meetings concerned perceived
age discrimination. In fact, the faculty members participating
in the "low morale" meetings showed a concern that the
administration was losing sight of the open communication and
group decision-making exemplified by the Quaker Meetings for
Worship. Therefore, because the evidence of record does not
indicate the "low morale" meetings related to unlawful age

discrimination, Plaintiff's participation in the meetings was not protected activity.

Third, Plaintiff contends he opposed unlawful discrimination by writing a letter to school administrator Ann Reece, the clerk of the School Committee.[8] The letter not once mentions age or, for that matter, any other form of unlawful discrimination. Letter from Klastow to Reece 1-2 (Apr. 6, 2009), Pl.'s Resp. Ex. O. Rather, Plaintiff complained, consistent with the complaints stemming from the "low morale" meetings, that the "administration has been making decisions for the last several years without discussion or explanation in any way to the faculty; decisions that have changed the culture of Newtown Friends School." Id. at 1. Furthermore, Plaintiff complained that faculty felt the administration was inapproachable and that "they could lose their jobs based on the whim of administration." Id. Plaintiff implored Reece to intervene in Nierenberg's decision to terminate Marion Smith. Id. at 2. But Plaintiff did not complain that the administration's actions had anything to do with age. Therefore, Plaintiff's letter to Reece was not protected activity. See Barber v. CSX Distribution

---

[8]     The School Committee is the school's governing board responsible for fiduciary and strategic policies and hiring the Head of School, who oversees the daily operations of the school. See Reece Dep. 7:16-20, Oct. 7, 2011; Nierenberg Dep. 12:5-12. Reece is the "clerk" or "chairman" of the School Committee. Reece Dep. 7:3-5.

Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (holding that employee's letter complaining about unfair treatment but not specifically complaining about age discrimination was not protected activity).

Fourth, Plaintiff contends he opposed unlawful discrimination by speaking out against the administration at the April 22, 2009, Meeting for Worship. At the meeting, Plaintiff rose and delivered a speech expressing his concern about "leadership." Plaintiff's speech followed the 2008 presidential election and Nierenberg's announcement that he would retire. Plaintiff testified that his remarks were "a teaching lesson about the Obama election." Klastow Dep. 79:18-19. Some individuals in attendance inferred from Plaintiff's remarks an improper personal attack directed at Nierenberg. See Klastow Dep. Ex. 6. In any event, Plaintiff did not speak about unlawful age discrimination at the school.

Plaintiff now contends that his speech on "leadership" actually referred to Defendant's unlawful age discrimination. See Pl.'s Resp. 21 ("While not a direct complaint about age discrimination, it was clearly of a piece of [Plaintiff's] yearlong campaign against the teacher assistance track and the mistreatment of older teachers such as Marion Smith."). The evidence of record does not indicate that school administrators understood Plaintiff's remarks as referring to unlawful age

16

discrimination. And there is no evidence, but for Plaintiff's self-serving statements, that his remarks about "leadership" were actually referring to unlawful age discrimination. Plaintiff asks the Court to infer from his remarks on leadership that he opposed unlawful discrimination. But this inference cannot reasonably be drawn from the evidence of record. See Pignataro, 593 F.3d at 268. Because Plaintiff's speech at the meeting did not concern unlawful age discrimination, it was not protected activity under the ADEA. See Barber, 68 F.3d at 701-02.

While Plaintiff may have been concerned about certain of Defendant's personnel practices and decisions, Plaintiff fails to show he engaged in protected activity with respect to his ADEA retaliation claim. The ADEA is not a general labor or personnel statute through which a teacher may direct personnel grievances. Therefore, the Court will grant Defendant's Motion with respect to the retaliation claim.

The Court now considers whether Defendant proffers legitimate, nondiscriminatory reasons for terminating Plaintiff and whether Plaintiff ultimately shows those reasons are pretext and the true reason Defendant terminated him was unlawful age discrimination.[9]

---

[9]     Although Plaintiff failed to support a prima facie case of retaliation, the Court, for the sake of completeness,

B.   <u>Legitimate, Nondiscriminatory Reasons for Plaintiff's
     Termination</u>

Defendant proffers three legitimate, nondiscriminatory

reasons for terminating Plaintiff. <u>See</u> Mem. in Supp. of Mot. for

Summ. J. 6-8. First, Plaintiff misused his employee credit card

in the summer of 2008. Second, Plaintiff mishandled school funds

for a ski trip in March 2009. Third, Plaintiff made

inappropriate comments at an April 22, 2009, Meeting for

Worship. School administrators discussed each incident with

Plaintiff prior to his termination on May 12, 2009, and provided

these reasons to justify his termination at that time.

Defendant, therefore, satisfied its burden to produce evidence

supporting the conclusion that it terminated Plaintiff for

nondiscriminatory reasons. <u>See</u> <u>Smith</u>, 589 F.3d at 691-92.


C.   <u>Pretext</u>

Because Defendant proffered legitimate,

nondiscriminatory reasons for terminating Plaintiff, Plaintiff

must now show the proffered reasons are pretext and Defendant's

true reason for terminating Plaintiff was unlawful age

discrimination. Plaintiff may defeat the Motion for Summary

Judgment "by <u>either</u> (i) discrediting the proffered reasons,

---

will consider the retaliation claim together with the
discrimination claim when proceeding to the remainder of the
<u>McDonnell Douglas</u> analysis.

either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (emphasis in original). "[Plaintiff's] evidence rebutting [Defendant's] proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). Id. (emphasis in original) (citations omitted).[10] Finally, Plaintiff will not discredit Defendant's proffered reasons by showing they are "wrong or mistaken" but must, instead, "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. (emphasis in original) (citations omitted) (internal quotation marks omitted). Plaintiff shoulders the ultimate burden of persuasion

---

[10]     Plaintiff is not required to discredit each of Defendant's proffered reasons. Fuentes, 32 F.3d at 764 n.7 ("We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder.").

to show but-for causation. See Smith, 589 F.3d at 690-91 (noting
that, despite use of McDonnell Douglas framework, ultimate
burden of persuasion to prove but-for causation in ADEA case
remains on plaintiff).

Plaintiff attempts to defeat Defendant's Motion for
Summary Judgment by discrediting Defendant's proffered reasons
and by adducing evidence to show that unlawful discrimination
was the true reason for his termination. Plaintiff's attempts,
however, are unsuccessful.

### 1.    Plaintiff's Improper Use of School's Credit Card

Defendant showed, in part by the deposition testimony
of Newtown Friends School Business Manager Alice Gens, that it
fired Plaintiff because he used a school credit card for
personal use. Before giving her testimony in this civil action,
Gens testified before the Pennsylvania Unemployment Compensation
Board of Review ("Unemployment Board") regarding Plaintiff's
personal use of Defendant's credit card. Plaintiff argues that
Defendant's proffered reason is pretext because Gens' testimony
"changed considerably." Pl.'s Resp. 11. In fact, Gens' testimony
before the Unemployment Board and her deposition testimony in
this civil action are consistent and do not discredit
Defendant's proffered reason.

Before the Unemployment Board, Gens testified that
after she spoke to Plaintiff about his inappropriate use of the
school's credit card, personal charges appeared on the billing
statement in June, July, and August for the card issued to
Plaintiff. Unemployment Board Tr. 14, Jan. 20, 2010, Pl.'s Resp.
Ex. G. Plaintiff called the school's bookkeeper regarding the
August charge for a car rental after he rented the car. Id. And
Plaintiff paid for the charges by check. Id.

In the deposition relating to this civil action, Gens
testified that she met with Plaintiff in June 2008 to discuss
his use of the school's credit card for personal items. Gens
Dep. 10:18-11:4. Plaintiff understood that he should no longer
use the card for personal items and advised Gens to expect two
additional charges that would appear on the next billing
statement. Id. at 11:5-12:1. Nevertheless, additional charges
beyond the charges about which Plaintiff warned Gens in June
appeared in July and August. Id. at 12:23-13:1. Those charges
were for gas, a bar or restaurant, and a rental car. Id. at
13:9-11. Although Gens was unable to contact Plaintiff over the
summer, Plaintiff eventually reimbursed the school. Id. at 12:4-
20, 13:15-18.

Indeed, Gens' testimony in this civil action appears
more detailed and, perhaps, more damning of Plaintiff's improper
use of the school's credit card. In any event, her deposition

21

testimony does not contradict that to which she testified before the Unemployment Board. And her testimony did not change, as Plaintiff asserts here. Therefore, Plaintiff fails to discredit Defendant's proffered reason regarding his improper use of the school's credit card.

### 2.   Mishandling Ski Club Funds

Defendant showed, in part by Gens' deposition testimony, that it terminated Plaintiff because he mishandled funds relating to ski trips during the 2008-2009 school year. Gens testified before the Unemployment Board regarding this incident. Plaintiff argues Defendant's proffered reason is pretext because Gens changed her testimony regarding whether the funds Plaintiff turned in were sufficient.

Before the Unemployment Board, Gens testified that Plaintiff collected money from students to finance ski club trips. Unemployment Board Tr. 15. Gens received the students' checks from Plaintiff to fund prior trips, but not the cash. Id. Gens requested the remainder of the funds, which Plaintiff provided on March 10, 2009. Id. Gens testified that, upon receipt of the cash, "it appears what was owed was handed in [by Plaintiff]." Id. at 16. But, "[t]here was really not great record keeping, it was difficult for [Gens] to ascertain what

funds should've been handed in, but yes, it appeared that it was, when the cash was handed in that it was satisfied." Id.

In the deposition relating to this civil action, Gens testified that upon learning of a discrepancy in the ski club's funds and expenses, Gens contacted Plaintiff by e-mail notifying him that it did not appear the school received all of the money collected from the students to cover the trips. Gens Dep. 26:7-27:12. Plaintiff brought to Gens an envelope with checks, but the funds were still insufficient. Id. at 27:10-19. Gens again notified Plaintiff by e-mail of the shortfall and requested a list of students from whom Plaintiff and another teacher collected funds. Id. at 27:22-28:7. After numerous requests, Plaintiff brought in cash he owed on behalf of the ski club. Id. at 28:8-10. On the envelope of cash appeared a "fairly illegible" list of students' names and amounts paid. Id. at 33:5-10. The sums from the list matched the cash in the envelope. Id. at 33:11-13. Nevertheless, Gens testified, even after Plaintiff turned in the cash and checks in March, there were insufficient funds to cover the ski club's expenses. Id. at 31:4-18. Gens did not further attempt to reconcile the ski club's budget because she did not want to involve the students. Id. at 33:20-34:2.

Gens' deposition testimony in this civil action does not contradict her testimony before the Unemployment Board. As

23

with her testimony regarding Plaintiff's inappropriate use of
the school's credit card, Gens offered more detailed testimony
regarding the ski club funds incident at her deposition than
before the Unemployment Board.[11] That Gens testified before the
Unemployment Board that "it appeared" that the funds Plaintiff
turned in were sufficient does not contradict, nor is it
inconsistent with, her deposition testimony that, while the
funds Plaintiff turned in matched the list Plaintiff made on the
envelope containing the funds, they were, ultimately,
insufficient to cover the ski club's expenses. Furthermore,
Gens' testimony is consistent with the testimony of other school
administrators and the documents provided to Plaintiff outlining
the reasons for his termination. Therefore, Plaintiff fails to
discredit Defendant's proffered reason regarding the incident
relating to the ski club's funds.[12]

---

[11]     The difference in detail between Gens testimony before
the Unemployment Board and her deposition testimony relating to
this civil action is consistent with the questions asked of her
at both proceedings. That is, during her deposition relating to
this civil action, Gens responded to more probing questions than
the questions asked before the Unemployment Board. Thus, Gens'
explanation of both incidents yielded a more detailed account of
the incidents at her deposition in this civil action.

[12]     With respect to both the credit card and ski club
incidents, Plaintiff argues that Defendant renewed his one-year
teaching contract after each incident, indicating that the
proffered reasons are pretext. Defendant notes that these
incidents formed a history of Plaintiff's improper conduct,
which culminated in his actions at the April 22, 2009, Meeting
for Worship. Therefore, that Defendant offered Plaintiff a new

### 3.   Speech at Meeting for Worship

Defendant showed that it terminated Plaintiff because of an inappropriate speech he made at an April 22, 2009, Meeting for Worship. Plaintiff raises two arguments to discredit Defendant's proffered reason. Both arguments fail.

First, Plaintiff argues that his speech at the Meeting was protected and, as such, it is not a legitimate, nondiscriminatory reason. Nevertheless, as discussed above, Plaintiff's speech was not protected activity because Plaintiff did not speak about unlawful age discrimination. Therefore, Defendant may rely on Plaintiff's speech as a legitimate, nondiscriminatory reason for terminating Plaintiff.

Second, Plaintiff argues that Defendant's proffered reason is pretext because Defendant did not terminate him until May 12, 2009, approximately three weeks after the Meeting and four weeks before the end of the school year. Defendant, after weighing the advantages and disadvantages, chose to terminate Plaintiff before the end of the school year. Nierenberg Dep. 128:6-129:4. Among the reasons Defendant terminated Plaintiff at that time was to relieve Plaintiff of certain obligations he held at the end of the school year, specifically, obligations relating to the end-of-year, out-of-state class trip. Id.

---

contract after the credit card and ski club incidents does not discredit Defendant's proffered reasons.

Plaintiff now contends that Defendant's reason is pretext because he successfully taught for three weeks without incident after the Meeting and before his termination. This, however, is not a reasonable inference to draw. In fact, Defendant ultimately concluded that, based on Plaintiff's past conduct, Plaintiff should not represent the school during a class trip outside of the state. Perhaps Defendant's reason for terminating Plaintiff before the end of the school year was mistaken, but Plaintiff fails to demonstrate such implausibility in Defendant's reason that a reasonable factfinder could rationally find it unworthy of credence. Nor does Plaintiff's argument attempt to discredit Defendant's ultimate reason for terminating Plaintiff——that he made inappropriate comments at a Meeting for Worship in front of students, staff, and parents. Therefore, Plaintiff fails to discredit Defendant's proffered legitimate, nondiscriminatory reasons for terminating him.

### 4.   Evidence of Discrimination and Retaliation

Finally, Plaintiff attempts to defeat Defendant's Motion for Summary Judgment by adducing evidence that unlawful discrimination and retaliation are more likely than not the reason Defendant terminated him.

First, Plaintiff argues that Defendant used the TAT to terminate older teachers. Nierenberg recalled, in the two or

three years before 2010, that Marion Smith, Donald Houghton,
Janine Mannick, and Lisa Mimm, were placed on the TAT.
Nierenberg Dep. 109:5-24. All of those teachers, except Mimm,
were not offered a contract the following year. Id. at 109:25-
110:16. Defendant took Mimm off the TAT and offered her a new
contract because she corrected the issues for which she was
placed on the TAT. Id. at 110:23-111:5. Nierenberg did not
testify to the age of the teachers he recalled being placed on
the TAT. And there is no evidence of record regarding the
reasons those teachers were placed on the TAT, whether those
reasons were accurate or had anything to do with age, and
whether Defendant refused to offer them a new contract despite
any improved performance. Nierenberg's deposition testimony does
not, as Plaintiff insists, indicate that Defendant used the TAT
to engage in unlawful age discrimination. Nor does his testimony
indicate that Defendant terminated Plaintiff because of his age.

Second, Plaintiff argues certain statements by
Nierenberg and Jody Smith provide so-called "direct" evidence of
age discrimination. Nierenberg testified as follows:

> Q.   Can you describe briefly . . . what you and
> your   subordinates   were   looking   for   [in   making
> personnel decisions] was?
>
> . . . .
>
> A.   The kind of teaching style that we were
> interested in was very similar. We wanted teachers who
> would engage students that were not sort of stand up

27

in front of a class and just lecture to them. That the classrooms were meant to be active learning places. That they had a love of working with children and an understanding of children. And that they knew, depending on what, obviously, they were hired to teach and knew their subject matter.

. . . .

[T]hat they would contribute to the community in lots of ways in addition to just, you know, getting up and saying I'm a math teacher, I'm going to teach math.

Q. Okay. If you could sort of present two concepts of teachers, one being the tweed jacket Ivy [sic] tower type with a pipe and the other being an energetic dynamic go-getter, is it correct that you were looking more for the latter than the former?

. . . .

A. Correct.

Nierenberg Dep. 31:24-33:14.

Plaintiff contends Nierenberg's deposition testimony "describes his preferences in loaded and coded terms," and, as such, is direct evidence of age discrimination. Pl.'s Resp. 17. This is not a reasonable inference. Nierenberg does not state that, in making personnel decisions, Defendant engaged in unlawful age discrimination. Nor can a reasonable inference be drawn that Nierenberg used "loaded and coded terms" to describe a preference for younger teachers. Rather, Nierenberg's testimony evinces a policy of hiring teachers who would engage students, not merely lecture from a podium. This was so regardless of the age of the teacher. Whether Defendant's policy

is wrong or mistaken is irrelevant. In any event, Nierenberg's testimony is not direct or circumstantial evidence of unlawful age discrimination.

Next, Plaintiff contends a letter from Jody Smith regarding Plaintiff's request for a stipend to attend a technology seminar is evidence of age discrimination. Plaintiff and Marion Smith requested a summer stipend to attend a technology seminar in San Antonio, Texas, from June 29 to July 2, 2008. Pl.'s Resp. Ex. L, at 1. Jody Smith denied the request in a letter to Plaintiff. Id. at 2. In that letter, Jody Smith wrote:

> Schools have traditions but in order to remain viable they need to re-invent themselves and extend an offer to newer members of the community to create a different vision for the school. In my mind, we are not protectors of the past, we are visionaries of the future. In that way, as in the best classrooms, we become guides on the side, rather than sages on the stage, and our value to the institution increases.

Id. Plaintiff contends with respect to Jody Smith's letter, "while not directly stating that older teachers should move aside for younger teachers, the message is loud and clear." Pl.'s Resp. 17. This is not a reasonable inference to draw from Jody Smith's letter. In fact, throughout the letter, Smith praises Plaintiff for demonstrating an interest in incorporating technology into the classroom. Id. at 2-3. And she provided Plaintiff an opportunity to resubmit a stipend proposal that

29

relates to a topic Plaintiff teaches. Id. at 3. Among the

reasons Jody Smith provided for denying Plaintiff's proposal was

that the responsibility of integrating technology into the

curriculum across subjects would be the responsibility of the

Director of Media and Technology, which position, at that time,

Defendant had not yet filled. Id. at 2. None of the reasons she

provided can be said to have had anything to do with age. Id. at

2-3. Plaintiff takes a part of Jody Smith's letter, which, in

fact, applauded Plaintiff's efforts and actions, and attempts to

shade it as evidence of age discrimination. But the inference

Plaintiff asks the Court to draw is unreasonable and in no way

supported by the evidence of record.[13]

---

[13]    Finally, Plaintiff contends that an annual report made
by Nierenberg's successor, Dana Harrison, about one year after
Plaintiff's termination, is evidence of discrimination. The
report provided:

> The School made three highly successful hires at the
> end of the last year and over the summer, in
> kindergarten, Lower School science, and Upper School
> social studies. We have brought to the school
> youthful, smart, engaging, talented and enthusiastic
> professionals to reach and teach our students.

Pl.'s Resp. Ex. M, at 1.

    First, the report is immaterial because it was
rendered one year after Plaintiff was terminated and by a
different Head of School. Second, the report's reference to
hiring "youthful" professionals, read in context of the entire
report and the evidence of record, does not indicate the real
reason Defendant terminated Plaintiff was unlawful age
discrimination.

Therefore, Defendant successfully established three legitimate, nondiscriminatory reasons for terminating Plaintiff. Plaintiff fails to discredit those reasons either individually or cumulatively, and Plaintiff fails to adduce evidence, whether circumstantial or direct, that discrimination or retaliation was more likely than not a motivating or determinative cause of his termination. See Fuentes, 32 F.3d at 764.

### D.   Punitive Damages

Defendant argues Plaintiff fails to provide sufficient evidence of willfulness or recklessness to support a claim for punitive or liquidated damages under the ADEA. Because Plaintiff's discrimination and retaliation claims fail, Defendant's argument regarding punitive and liquidated damages is moot.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and enter judgment in favor of Defendant and against Plaintiff.